IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


JEFFREY A. JOHNSON,

        Plaintiff,

v.                                      Civil Action No. 5:05CV55
                                                       (STAMP)
WHEELING PITTSBURGH STEEL CORPORATION,

        Defendant.


MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.  Procedural History

        On April 26, 2005, the plaintiff, Jeffrey A. Johnson, filed a

complaint in this Court asserting claims against the defendant,

Wheeling Pittsburgh Steel Corporation ("WPSC"), for racial and

religious discrimination and retaliation in violation of Title VII

of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e, et seq.[1]  On

July 14, 2006, WPSC filed a motion for summary judgment, to which

the plaintiff responded and WPSC replied.

        WPSC's motion for summary judgment is now fully briefed and

ripe for review.  After considering the parties' memoranda and the

_____

        [1]Title VII provides, in relevant part:

        It shall be an unlawful employment practice for an
        employer to fail or refuse to hire or to discharge any
        individual, or otherwise discriminate against any
        individual with respect to his compensation, terms,
        conditions, or privileges of employment because of such
        individual's race, color, religion, sex or national
        origin.

42 U.S.C. § 2000e-2(a)(1).

applicable law, this Court finds that WPSC's motion for summary judgment should be granted in part and denied in part. Specifically, WPSC's motion for summary judgment should be denied with respect to the plaintiff's religious discrimination claim regarding the millwright position on the daylight bull gang. WPSC's motion for summary judgment should be granted with respect to all claims regarding the bearing repairman position, the racial discrimination and retaliation claims regarding the millwright position on the daylight bull gang and all claims regarding the temporary position on the slab yard.

## II. Facts

This action arises out of the plaintiff's employment relationship with WPSC. The plaintiff contends that he has been unlawfully denied three positions based upon his race and religion. Specifically, the plaintiff alleges that he has been unlawfully denied the bearing repairman, the millwright job in the daylight bull gang ("bull gang") and the slab yard millwright ("slab yard") positions. Further, the plaintiff asserts that WPSC has subjected him to unlawful retaliation based upon an Equal Employment Opportunity Commission ("EEOC") complaint against WPSC brought by plaintiff in 2000.

The plaintiff is employed by WPSC as a mechanical millwright. On February 8, 2000, the plaintiff filed an EEOC complaint against WPSC alleging racial discrimination. Specifically, the plaintiff asserted that he overheard a conversation between his supervisor,

Donald Dunfee ("Dunfee"),[2] and another WPSC employee, Renee Bethel ("Bethel"), in which Dunfee told Bethel that if he had an operation on his nose, he would make it larger, and that this statement was a racial slur. Soon thereafter, the plaintiff filed a civil action against WPSC based upon the EEOC complaint. In or about September 2000, the plaintiff requested voluntary dismissal of the civil action.

In or around October or November 2001, Dunfee posted a bid for a bearing repairman job at WPSC. The plaintiff was the successful bidder having the most seniority. The plaintiff asserts that Dunfee "realized who got the job, the job was canceled, wasn't even re-posted for bid, and they gave it to a guy named Tommy Dear." (Pl.'s Resp. at 2; Ex. 3 at Lines 10-15.)

In August 2003, WPSC reorganized some of its positions and created a new position, the millwright position on the daylight bull gang. The plaintiff asserts that he was the fifth or sixth man in seniority to apply for one of the eight positions that were available on the bull gang. When the plaintiff applied for that position, he asserts that Dunfee told him that the only jobs remaining had days off on Tuesdays and Wednesdays. The plaintiff told Dunfee that he needed to be off work on Sundays because he is an officer in his church. The plaintiff asserts that Dunfee

---

[2]Mr. Dunfee is the area manager of mechanical maintenance at the hot strip rolling and processing division at WPSC. This is a position Mr. Dunfee has held since July 1999.

responded by telling him to "take it or leave it." (Pl.'s Resp. to Mot. for Summ. J. Ex. 3 at 10.) The plaintiff did not accept the position. The position was offered to and accepted by Ed Lapanja ("Lapanja"). Although the position was supposed to permit the worker to have Tuesdays and Wednesdays off, plaintiff claims that Lapanja can change his days off with Dunfee's permission and that since he took the position, Lapanja has had been off work on various days, including Saturdays and Sundays.

In January or February 2004, a right hand injury required the plaintiff to be off work for a compensable period of time. The plaintiff was released to light duty work on February 4, 2004. The light duty work was under a twelve-week alternative work policy with WPSC that ended the week of April 28, 2004. The plaintiff presented a "return to work slip" dated April 28, 2004. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 11.) The plaintiff indicated that he could return to work with "limited duty with right hand." (Id.) The next work day, May 3, 2004, the plaintiff's immediate supervisor, Jonathan Lewis ("Lewis"), scheduled the plaintiff to change the edger rolls on the E-3 edgers. The plaintiff requested that he be able to perform a different task. The plaintiff asserts that Lewis was told by Dunfee to give this assignment to the

plaintiff.[3]  The plaintiff performed his assigned task of changing the E-3 edgers.

The plaintiff asserts that his hand became swollen and he was taken off work by the end of the week.  He was unable to work for eight months due to the re-injury of his right hand.

Finally, in April 2004, Dunfee posted two "temporary positions" in the slab yard that were to be daylight positions with "flexible" days off.  (Pl.'s Resp. at 6.)  The plaintiff did not bid on these positions because there would be variable days off which could require the plaintiff to work on Sundays.

In the complaint, the plaintiff seeks compensatory damages, punitive damages in the amount of $300,000.00 and attorney's fees and costs.

### III.  Applicable Law

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

---

[3]The plaintiff's co-worker, Robert Poole ("Poole") testified in deposition that he offered to switch job assignments with the plaintiff.  When Poole asked Lewis if they could switch assignments, Poole testified that Lewis told him he could not do so because Dunfee assigned Lewis to give the plaintiff the E-3 edger job.  (Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 10 pg. 7, lines 7-8.)  Lewis testified that he believed that the plaintiff could do the work with only his good hand.  (Def.'s Mot. for Summ. J. Ex. 15 p. 19.)

as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time

for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. <u>See</u> <u>Oksanen v. Page Mem'l Hosp.</u>, 912 F.2d 73, 78 (4th Cir. 1990), <u>cert. denied</u>, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## IV. <u>Discussion</u>

In its motion for summary judgment, WPSC argues that: (1) the plaintiff's claim that he was unlawfully denied a position as a bearing repairman due to racial or religious discrimination or on the basis of retaliation is barred by the statute of limitations; and (2) the plaintiff's racial and religious discrimination and retaliation claims regarding the bearing repairman, the bull gang and the slab yard positions fail as a matter of law because the plaintiff cannot demonstrate a material issue of fact on these claims. In response, the plaintiff asserts that WPSC's motion for summary judgment must be denied because the plaintiff was discriminated and retaliated against concerning the bearing repairman, the bull gang and the slab yard positions.

A.    Statute of Limitations on Title VII Claim

Title VII requires a plaintiff to exhaust administrative remedies before an action may be filed in a federal district court. Love v. Pullman Co., 404 U.S. 522 (1972). Generally, a plaintiff is required to file a claim with the EEOC before pursuing the matter in federal court. Cornell v. Gen. Electric Plastics, 853 F. Supp. 221, 224 (S.D. W. Va. 1994). In order to preserve federal rights in West Virginia, a "deferral" state, a plaintiff must file a complaint with the EEOC within 300 days of the alleged unlawful employment practice. See Mohasco Corp. v. Silver, 447 U.S. 807 (1980).

In this civil action, the plaintiff filed an EEOC complaint on September 17, 2004. Therefore, any claims that occurred on or before November 22, 2003 are time-barred. The plaintiff's complaint alleges that WPSC discriminated against him by failing to promote him to the bearing repairman position in October or November 2001. Thus, this Court finds that the plaintiff did not timely file a complaint with the EEOC with respect to the bearing repairman position. Accordingly, WPSC's motion for summary judgment with respect to the bearing repairman position should be granted.

B.    Title VII Employment Discrimination Claim

Discrimination may be shown by direct evidence of discriminatory intent or through use of the McDonnell Douglas test. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). If an

employee makes a sufficiently strong showing of discrimination using direct evidence, but the employer responds with proof of a legitimate reason[s], then the court may view the employer as having mixed motives; some motives are legitimate and some are not.

   1.   Racial Discrimination: Failure to Promote

In order to state a viable claim for discriminatory treatment under the McDonnell Douglas test, the plaintiff must prove a set of facts enabling this Court to conclude that it is more likely than not that an alleged failure to promote was motivated by discrimination. Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, 53 F.3d 55, 58 (4th Cir. 1995). The plaintiff must show by a preponderance of the evidence that:

> (1) he is a member of a protected class; (2) his employer had an open position for which he applied or sought to apply; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination.

Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 959-60 (4th Cir. 1996). If the plaintiff establishes a prima facie case, the burden then shifts to WPSC to show a non-discriminatory reason for the failure to promote. Id. at 960. If WPSC satisfies this burden, the burden shifts back to the plaintiff to prove that the reason provided by WPSC is actually a pretext. Id.

As stated in Hill v. Lockheed Martin, 354 F.3d 277, 284 (4th Cir. 2004),

> Regardless of the type of evidence offered by the plaintiff . . . the ultimate question in every employment discrimination case involving a claim of disparate

treatment is whether the plaintiff was the victim of intentional discrimination.

WPSC argues that the facts of this civil action do not support a failure to promote claim. WPSC asserts that the plaintiff has failed to present evidence that race was a factor in the plaintiff's failure to get the bearing repairman, the bull gang and the millwright positions. In response, the plaintiff asserts that he was unlawfully discriminated against by WPSC for failing to promote him to these three positions.

First, this Court notes that the plaintiff's failure to promote claim with respect to the bearing repairman position is time-barred, and thus this Court will only address the plaintiff's claims with respect to the bull gang and the slab yard positions.

This Court finds that the plaintiff has failed to establish a prima facie case of discrimination for either of the failure to promote claims. With respect to the bull gang position, the plaintiff has only provided speculation as to why the position he applied for required him to work some Saturdays and Sundays. With respect to the slab yard position, the plaintiff did not apply for the position, and thus fails to establish a failure to promote claim.

    a.  Bull Gang Position

The plaintiff asserts that he was the "fifth or sixth man in seniority to apply for [one of] the eight positions on the bull gang and when he applied, Mr. Dunfee told him that the only jobs

left were those with Tuesdays and Wednesdays off." (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 4.) The plaintiff declined the position as a millwright with the bull gang. Id. Lapanja was hired for this position, which was supposed to have time off on Tuesdays and Wednesdays. The plaintiff asserts that Lapanja has changed the schedule to have time off on Saturdays and Sundays with Dunfee's permission.[4] The plaintiff asserts that this is evidence that Dunfee manipulated the schedule so that he could discriminate against the plaintiff. This Court finds that the plaintiff fails to provide any evidence to support his assertion that Dunfee was manipulating the work schedule on the bull gang in an unlawfully discriminatory fashion. As stated in Autry v. North Carolina Dep't of Human Resources, 820 F.2d 1384, 1386 (4th Cir. 1987), "[m]ere speculation by the plaintiff that the defendant had a discriminatory motive is not enough to withstand a motion for summary judgment."

Further, the plaintiff asserts that Dunfee "has been reported" to make racial slurs about people with a "big nose" in the plaintiff's presence. (Pl.'s Resp. to Mot. for Summ. J. at 16.) This Court finds that the plaintiff's assertion, without further evidence, is insufficient to demonstrate that Dunfee intended to

---

[4]Upon review of the plaintiff's Exhibit 6, this Court notes that in 2004 Lapanja had fifteen Sundays off, eighteen Tuesdays off, and 18 Wednesdays off.

discriminate against the plaintiff based upon his race.  <u>See</u> <u>Autry</u>,
820 F.2d at 1386.

This Court finds that the plaintiff has not presented
sufficient evidence for a jury to conclude that WPSC's failure to
promote the plaintiff to the bull gang position was due to the
plaintiff's race.  Accordingly, this Court finds that WPSC's motion
for summary judgment must be granted with respect to the
plaintiff's failure to promote claim regarding the bull gang
position.

b.    <u>Slab Yard Position</u>

In this civil action, Dunfee posted two "temporary positions"
in the slab yard that could require weekend work.   The plaintiff
did not bid on or attempt to bid on the slab yard positions.
(Pl.'s Resp. to Mot. for Summ. J. at 6; Compl. ¶ 11.)  Instead, the
plaintiff argues that WPSC is liable for racial discrimination
because the positions were posted in a discriminatory manner
specifically to discriminate against the plaintiff.

This Court finds that plaintiff cannot establish a <u>prima facie</u>
case of discrimination on the failure to promote claim if he did
not apply for the position in question.  <u>See</u> <u>Evans</u>, 80 F.3d 959-60
(plaintiff must prove by a preponderance of the evidence that he
applied or sought to apply for an open position to meet the second
prong of a <u>prima facie</u> case of employment discrimination).
Accordingly, this Court must find that summary judgment is

appropriate in favor of WPSC with respect to the plaintiff's
failure to promote claim regarding the slab yard positions.

2. <u>Religious Discrimination</u>

Title VII makes it "an unlawful employment practice for an
employer . . . to discharge any individual . . . because of such
individual's religion." 42 U.S.C. § 2000e-2. In a Title VII
action for employment discrimination based upon the plaintiff's
religion, the plaintiff must show either that he suffered disparate
treatment as a result of his religion or that the employer failed
to accommodate his religious practices. <u>Chalmers v. Tulon Co. of
Richmond</u>, 101 F.3d 1012, 1017 (4th Cir. 1996.)

To establish a <u>prima facie</u> religious accommodation claim, a
plaintiff must establish that: (1) he has a bona fide religious
belief that conflicts with an employment requirement; (2) he
informed the employer of this belief and requested an accommodation
thereof; and (3) he was disciplined for failure to comply with the
conflicting employment requirement. <u>Id.</u> at 1019. With respect to
the third prong, the plaintiff may prove that he was disciplined if
he was not hired or promoted, fired or otherwise discriminated
against for failure to comply with the conflicting employment
requirement. <u>See e.g.</u> <u>Henegar v. Sears, Roebuck & Co.</u>, 965 F.
Supp. 833, 834 (N.D. W. Va. 1997.)

The Supreme Court in <u>Trans World Airlines v. Hardison</u> held
that Section 701(j) of Title VII does not require an employer to
accommodate an employee's religious practices at "more than a <u>de</u>

_minimis_ cost." Further, an employer's duty to accommodate does not require the employer to accept an employee's proposed accommodation if its own accommodation is otherwise adequate. Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60 (1986).

WPSC asserts that the plaintiff has failed to provide sufficient evidence that he was treated more harshly than other employees of a different religion with respect to the bull gang and the slab yard positions. In response, the plaintiff asserts that: (1) the bull gang position was changed to permit workers to have Tuesdays and Wednesdays off instead of Saturdays and Sundays to discourage the plaintiff from accepting the position; and (2) he did not bid on the slab yard positions because they were scheduled to have "flexible days off" and because he required every Sunday off since he was an officer at his church.

### a. Bull Gang Position

In this civil action, the plaintiff asserts that the bull gang position was filled by Dunfee in a discriminatory manner. In his affidavit, Dunfee states that "[b]y the time Jeff Johnson's seniority was reached, the only jobs in the daylight bull gang that remained had Tuesdays and Wednesdays off." (Def.'s Mot. for Summ. J. Ex. 3.) WPSC argues that the plaintiff cannot prove that he was discriminated against based upon his religion.

This Court finds that the plaintiff has established a prima facie claim for religious accommodation. First, the plaintiff is an officer in his church that requires an accommodation for

religious practices on Sundays. Second, the plaintiff informed WPSC of this belief and requested an accommodation. In his deposition testimony, Dunfee acknowledges that he knew that the plaintiff required Saturday and Sundays off due to his religious beliefs and that he tried to accommodate the plaintiff. However, the plaintiff asserts that Dunfee offered him the bull gang position with Tuesdays and Wednesdays off and told him to "take it or leave it." (Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 4 at 50-53.) This Court finds that the plaintiff meets the second prong because WPSC knew of the plaintiff's religious beliefs and the plaintiff requested an accommodation. Third, the plaintiff was not hired for the bull gang position because he required time off on Sundays.

This Court finds that the plaintiff has established the three requirements for a <u>prima facie</u> case of religious accommodation. Since the plaintiff has established a <u>prima facie</u> case of religious discrimination, the burden shifts to WPSC to show that it either provided reasonable accommodation or could not accommodate the plaintiff's religious belief without undue hardship. This Court finds that WPSC has not sufficiently shown that it provided reasonable accommodation for the plaintiff's religious beliefs.

It is uncontroverted that Lapanja received the bull gang position and that he has been able to request days off other than Tuesday and Wednesday. For instance, Lapanja's 2004 work schedule allowed him to have various Thursdays, Fridays and Sundays off.

(Id. Ex. 6.) Lapanja has been and still is able to request and take days off with Dunfee's approval.

Therefore, genuine issues of material fact exist as to whether WPSC accommodated the plaintiff regarding the bull gang position. Accordingly, this Court finds that WPSC's motion for summary judgment must be denied with respect to the plaintiff's religious discrimination claim regarding the bull gang position.

      b.   Slab Yard Position

"While Title VII does not require a plaintiff to apply for a job when to do so would be a futile gesture, a plaintiff claiming he was deterred from applying for a job by his employer's discriminatory practices has the burden of proving that he would have applied for the job had it not been for those practices." Brown v. McLean, 159 F.3d 898, 903 (4th Cir. 1998)(citing Int'l Bhd. of Teamsters v. United States, 431 U.S. 324 (1977)). This is "not always [an] easy burden." Teamsters, 431 U.S. at 368.

In this civil action, the plaintiff asserts that he did not bid on the slab yard position because he needed to be off on Sundays and the position's schedule did not provide for Sundays off work. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 24.) There is no evidence that the plaintiff expressly requested a special accommodation to have off on Sundays based upon his religious belief. Further, the plaintiff has provided no evidence, outside of his own statements, that he was interested in this position at

the time it was filled. Thus, the plaintiff has failed to establish a prima facie claim for religious accommodation.

Accordingly, this Court must find that summary judgment is appropriate in favor of WPSC with respect to the plaintiff's religious discrimination claim regarding the "temporary" slab yard position.

### c.  Title VII Retaliation Claim

Title VII's anti-retaliation provision forbids an employer from "discriminating against"[5] an employee (or job applicant) because he or she has "opposed" a practice that Title VII forbids or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." § 2000e-3(a).

In order to establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) he engaged in a protected activity; (2) his employer took an adverse employment action against him; and (3) a causal link existed between the protected activity and the adverse employment action. Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998).

In the complaint, the plaintiff asserts he "had complained of racially offensive comments and was retaliated against in further violation of the anti-discrimination provisions of Title VII." (Complaint ¶ 12.)  Specifically, the plaintiff filed an EEOC

_____

[5]"Discriminate against" refers to distinctions or differences in treatment that injure a protected individual. See Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 174 (2005).

complaint in 2000 asserting that he had overheard a conversation between Dunfee and Bethel, in which Dunfee told Bethel that if he had an operation on his nose he would make it larger. The plaintiff filed the EEOC complaint because he believed this statement was a racial slur since "most blacks have big noses and big lips." (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 1.)

The plaintiff asserts that WPSC engaged in conduct that constitutes retaliation for complaining about a protected activity. Specifically, the plaintiff asserts that: (1) Dunfee filed the bull gang position by seniority and then changed the days off from Saturdays and Sundays to Tuesdays and Wednesdays to retaliate against the plaintiff for filing the EEOC charge in 2000; (2) Dunfee posted the slab yard positions with flexible days off as a pretext to discriminate against the plaintiff; and (3) the day that the plaintiff began work with the restriction of limited duty with his right hand,[6] he was required to do one of the most difficult jobs in the mill, changing the E-3 edgers as a form of retaliation. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 25.)

WPSC argues that the plaintiff's retaliation claims fail because the four-year interval between the charge and the adverse employment action negates any inference that a causal connection exists between the two occurrences, see Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998). Further, WPSC argues that even if the

_____

[6]The plaintiff had injured his right hand and was in an alternative work program.

plaintiff can establish a <u>prima facie</u> case of retaliation, the plaintiff cannot establish that WPSC's legitimate reason for adhering to its non-discriminatory alternative work program was actually a pretext for retaliating against the plaintiff.

This Court finds that the plaintiff fails to make a claim for retaliation with respect to the bull gang and the slab yard positions because the plaintiff is not opposing a practice that is an unlawful practice under Title VII.

"Title VII does not create a claim for every employee who complains about the potential for Title VII violations or about other employees' isolated racial slurs." Instead, Title VII protects "an employee who opposes 'any practice made unlawful employment practice,' 42 U.S.C. [§] 2000e-3(a), or who 'reasonably believes' he is opposing a practice made an unlawful practice by Title VII." <u>Jordan v. Alternative Resources Corp.</u>, 467 F.3d 378 (4th Cir. 2006).

This Court finds that Dunfee's alleged racial slur that he would like to make his nose bigger which statement was made in the plaintiff's presence is not an unlawful employment practice. In <u>Jordan</u>, the court held that the plaintiff did not state a claim for retaliation upon which relief could be granted because the plaintiff was complaining about a single isolated racist comment, not an unlawful employment practice under Title VII. <u>Id.</u> Similarly, in this civil action, the plaintiff has failed to provide evidence that he is opposing an unlawful employment

19

practice under Title VII. Even if the plaintiff reasonably believes that he may eventually be violated by a fellow employee's conduct, this is not enough to state a claim for retaliation. <u>See EEOC v. Navy Federal Credit Union</u>, 424 F.3d 397, 406 (4th Cir. 2005).

This Court notes that there is nothing in this ruling that condones any alleged contemptible comment made by Dunfee in this action. However, as stated in <u>Jordan</u>, 467 F.3d at 378, "complaining about an isolated racial slur is not opposition protected by Title VII."

Thus, the plaintiff's retaliation claims based upon the alleged racial comment by Dunfee must fail and this issue merits no further analysis. Accordingly, this Court finds that the WPSC's motion for summary judgment with respect to the plaintiff's retaliation claims should be granted.

V. <u>Conclusion</u>

For the reasons stated above, the defendant's motion for summary judgment is hereby DENIED IN PART AND GRANTED IN PART. The defendant's motion for summary judgment is DENIED with respect to the religious discrimination claim regarding the millwright position on the daylight bull gang. The defendant's motion for summary judgment is GRANTED with respect to all claims regarding the bearing repairman position, the racial discrimination and retaliation claims regarding the millwright position on the

daylight bull gang and all claims regarding the two temporary positions in the slab yard.

      IT IS SO ORDERED.

      The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

      DATED:    November 29, 2006


                      /s/ Frederick P. Stamp, Jr.
                      FREDERICK P. STAMP, JR.
                      UNITED STATES DISTRICT JUDGE